PEOPLE v WALTONEN

Docket No. 270229. Submitted October 12, 2006, at Petoskey. Decided
November 7, 2006, at 9:00 a.m. Leave to appeal sought.

Lloyd J. Waltonen was bound over for trial in the Charlevoix Circuit
Court on four counts of first-degree criminal sexual conduct (CSC
I), MCL 750.520b(1)(c); four counts of delivery of less than 50
grams of a controlled substance, MCL 333.7401(2)(a)(iv); four
counts of maintaining a drug house, MCL 333.7405(d); one count
of eavesdropping, MCL 750.539d; and four counts of engaging the
services of a prostitute, MCL 750.449a. The defendant moved to
quash the bindover with respect to the CSC I charges, arguing that
the underlying sexual conduct was entered into consensually in
exchange for the illegal delivery of drugs. The circuit court,
Richard M. Pajtas, J., granted the motion, and the prosecutor
appealed by leave granted.

The Court of Appeals *held*:

1. Whether the complainant consented to the sexual conduct in
this case is not relevant to the inquiry whether the prosecution
submitted sufficient evidence to bind the defendant over on
charges of CSC I. The prosecution was required to establish
probable cause to believe that the defendant sexually penetrated
the victim, that the defendant committed the underlying felony of
delivering a controlled substance, and that there was a direct
interrelationship between the sexual penetration and the felony.
Thus, the elements of MCL 750.520b(1)(c) could be established
regardless whether the complainant consented to the sexual
penetration.

2. The circuit court erred in quashing the CSC I charges
because, although the sexual conduct did not occur during the
commission of the underlying felony, there was evidence that the
sexual conduct occurred in exchange for the delivery of the
controlled substances, which meets the statutory requirement
that the sexual penetration occur "under circumstances involving
the commission of" the underlying felony.

Reversed and remanded for further proceedings.

1. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — DELIVERY OF CONTROLLED
   SUBSTANCES — DEFENSES — CONSENT.

   Consent is not a defense to a charge of first-degree criminal sexual
   conduct under circumstances involving the commission of another
   felony where the underlying felony is delivery of a controlled
   substance (MCL 333.7401[2][a][4], MCL 750.520b[1][c]).

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — DELIVERY OF CONTROLLED
   SUBSTANCES — PROBABLE CAUSE.

   To bind a defendant over for first-degree criminal sexual conduct
   under circumstances involving the commission of another felony,
   the prosecution must establish probable cause to believe that the
   defendant sexually penetrated the complainant, that the defen-
   dant committed the underlying felony, and that there was a direct
   interrelationship between the felony and the sexual penetration,
   which does not necessarily require that the penetration occur
   during the commission of the felony (MCL 750.520b[1][c]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *John A. Jarema*, Prosecuting Attor-
ney, *Shaynee K. Fanara*, Chief Assistant Prosecuting
Attorney, and *Brian O. Neill*, Assistant Attorney Gen-
eral, for the people.

*Kerry B. Zahner* for the defendant.

Before: WHITBECK, C.J., and MURPHY and SMOLENSKI, JJ.

MURPHY, J. The prosecution appeals by leave granted
the circuit court's order granting defendant's motion to
quash the information relative to four counts of first-
degree criminal sexual conduct (CSC I), MCL
750.520b(1)(c), which makes it an offense to engage in
sexual penetration under circumstances involving the
commission of any other felony. The underlying or
predicate felony in this case is delivery of less than 50
grams of a controlled substance (Oxycontin),[1] MCL

---

[1] Oxycontin contains oxycodone, which is listed as a schedule 2 con-
trolled substance pursuant to MCL 333.7214(a)(i).

333.7401(2)(a)(iv), as indicated in the felony information. Evidence was presented at the preliminary examination that indicated that defendant had initially supplied the victim with Oxycontin at no cost over a two-week period, supposedly creating an addiction, and defendant subsequently demanded sex in exchange for more Oxycontin. On multiple occasions, the victim ostensibly consented to sexual intercourse and oral sex with defendant in order to obtain Oxycontin and feed her drug habit. One of the primary issues on appeal regards the extent of the nexus between the sexual penetration and the underlying felony, as well as the sequence of events, necessary to support a conviction under MCL 750.520b(1)(c). We also address whether consent to sexual penetration is a defense to a prosecution pursued under MCL 750.520b(1)(c), accepting that the law does not recognize consent as a viable defense to the underlying felony.

Applying the plain and unambiguous language of the statute, we conclude that the prosecution was required to submit evidence sufficient to establish probable cause to believe that defendant sexually penetrated the victim, that defendant committed the underlying felony, and that there existed a direct interrelationship between the felony and the sexual penetration, which does not necessarily require that the penetration occur during the commission of the felony. We further hold that the defense of consent is irrelevant to our inquiry because consent is not a defense to delivery of controlled substances and the Legislature has not provided any framework to otherwise permit a consent defense to unlawful sexual penetration under MCL 750.520b(1)(c). Considering the evidence presented at defendant's preliminary examination, we conclude that the circuit court erred in quashing the district court's order bind-

ing defendant over for trial on four counts of CSC I. Accordingly, we reverse and remand.

### I. PRELIMINARY EXAMINATION EVIDENCE AND PROCEDURAL HISTORY

The victim testified that in September 2003 she worked at a northern Michigan bar where defendant was a regular customer. She stated that defendant offered her free Oxycontin while she was working at the bar one day. The victim accepted the Oxycontin despite not having previously tried the drug. She asserted that for approximately two weeks thereafter, defendant would give her free Oxycontin each time he patronized the bar, which was approximately five days a week.

The victim contended that defendant initially gave her one pill at a time, but that he later gave her two or three pills at a time because she required more of the drug to get high. She testified that defendant eventually invited her to his trailer in Charlevoix to help him paint, which she did in exchange for additional Oxycontin, along with some methadone.

The victim claimed that, over time, she became dependent on the drugs such that she would get sick to her stomach, would sweat, and could not sit still if she did not take them. After becoming dependent, the victim went to defendant for more drugs, and he told her that she "had to help him out too." She testified that defendant would not sell her the pills for money and that she had to negotiate alternatives with him in order to obtain more pills. Defendant wanted sex in return for the Oxycontin and, although she did not want to have sex with defendant at first, the victim decided to engage in sexual relations with him so that she could acquire more drugs and satisfy her dependency.

The victim testified that it was her choice to have sex with defendant and that she had sexual intercourse and oral sex with him on numerous occasions. In return, defendant provided her with drugs. The acts of sexual penetration along with the delivery of drugs formed the basis for the prosecution under MCL 750.520b(1)(c). The victim indicated that her sex-for-Oxycontin encounters with defendant became "routine" and that she would go to defendant's home for pills "pretty much" every other day. At one point, the victim told defendant that she wanted the pills before having sex with him, but, when he complied, she left immediately, so thereafter he demanded that they have sex before she would receive any drugs. At times, the victim would ask defendant to stop when they were having sex, which he would not always do right away, and she would then push him off her if he did not stop on his own. The victim testified that on another occasion when she did not want to have sex with defendant, he began to chase her and ripped the pocket off her pants, and she ran to a gas station to ask for help. She engaged in various social activities with defendant, but she only did so in order to obtain more drugs.

The felony warrant issued against defendant charged him with three counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b), which makes it a crime to use force or coercion to accomplish sexual penetration; one count of engaging the services of a prostitute, MCL 750.449a; and one count of delivery of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(iv). At the preliminary examination, the prosecution requested bindover on additional charges and elevation of the CSC III charges to CSC I under MCL 750.520b(1)(c). Defendant was bound over on four counts of CSC I; four counts of delivery of less than 50 grams of a controlled substance; four counts of main-

taining a drug house, MCL 333.7405(1)(d); one count of eavesdropping, MCL 750.539d; and four counts of engaging the services of a prostitute.

Defendant subsequently moved to quash the bindover or information in the circuit court with respect to the CSC I charges. After hearing oral argument, the circuit court granted the motion, determining that the victim engaged in consensual sex with defendant in exchange for the illegal delivery of drugs and that this did not constitute CSC I. Throughout the hearing, the circuit court commented about the lack of any nexus or connection between the acts of sexual penetration and the underlying felony. The circuit court refused to consider the prosecution's request for reinstatement of the CSC III charges, which forms the basis of another appellate argument, but one that we need not resolve in light of our holding. This Court subsequently granted the prosecutor's application for leave to appeal. *People v Waltonen*, unpublished order of the Court of Appeals, entered June 15, 2006 (Docket No. 270229).

## II. STANDARDS OF REVIEW AND PRINCIPLES GOVERNING PRELIMINARY EXAMINATIONS

In *People v Hill*, 269 Mich App 505, 513-514; 715 NW2d 301 (2006), this Court set forth the applicable standards of review relative to motions to quash and the pertinent principles concerning preliminary examinations:

> A circuit court's ruling regarding a motion to quash an information and the district court's decision to bind over a defendant are reviewed to determine whether the district court abused its discretion in making its decision. *People v Hotrum*, 244 Mich App 189, 191; 624 NW2d 469 (2000); *People v Riggs*, 237 Mich App 584, 587; 604 NW2d 68 (1999); *People v Hamblin*, 224 Mich App 87, 91; 568 NW2d 339 (1997). However, where the decision entails a question

of statutory interpretation, i.e., whether the alleged conduct falls within the scope of a penal statute, the issue is a question of law that we review de novo. *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001); *Hotrum, supra* at 191; *Riggs, supra* at 587-588. . . .

The primary function of a preliminary examination is to determine whether a felony has been committed and, if so, whether there exists probable cause to believe that the defendant committed the felony. *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003), citing MCL 766.13. Probable cause requires evidence sufficient to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt. *Yost, supra* at 126. The magistrate, however, need not be without doubts regarding guilt. *Id.* Following the conclusion of the preliminary examination, if it appears to the district court that there is probable cause to believe that a felony was committed and that the defendant committed it, the court must bind the defendant over for trial. MCL 766.13; MCR 6.110(E).

### III. ANALYSIS

#### A. STATUTORY CONSTRUCTION

This appeal requires us to ascertain the Legislature's intent regarding MCL 750.520b(1)(c); therefore, we shall commence our analysis with a review of the general principles that guide statutory construction. Our primary task in construing and interpreting a statute is to discern and give effect to the intent of the Legislature. *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005) (opinion by KELLY, J.); *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The actual words used in the statute provide us with the most reliable evidence of the Legislature's intent. *Shinholster, supra* at 549. In ascertaining legislative intent, we give effect to every word, phrase, and clause in the statute. *Id.* This Court must consider both

the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id*. It is necessary to avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Shinholster, supra* at 549 (citation and quotation omitted). If the language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we are required to enforce the statute as written. *Tombs, supra* at 451; *Shinholster, supra* at 549. Critical to our analysis here, "[a] necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

### B. INTERPRETATION OF MCL 750.520b(1)(c) AND THE DEFENSE OF CONSENT

Defendant was bound over to the circuit court on four counts of CSC I pursuant to MCL 750.520b(1)(c), which provides:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

> \* \* \*

> (c) Sexual penetration occurs under circumstances involving the commission of any other felony.

In *People v Wilkens*, 267 Mich App 728, 736-737; 705 NW2d 728 (2005), this Court examined § 520b(1)(c) and determined that the plain language of the statute requires the prosecutor to prove (1) that a sexual penetration occurred and (2) that it occurred during the commission of another felony. See also *People v Pettway*, 94 Mich App 812, 815; 290 NW2d 77 (1980).[2] The *Wilkens* panel addressed an argument by the defendant that the trial court had erred in precluding a defense of consent when it refused to instruct the jury on the defense. The defendant was charged with CSC I under § 520b(1)(c), with the underlying felony being production of child sexually abusive material, MCL 750.145c(2). *Wilkens, supra* at 736-737. This Court stated that "regardless of whether the penetration was consensual, if it occurs during the commission of another felony, the elements of MCL 750.520b(1)(c) are satisfied." *Id.* at 737. The panel further concluded that "if consent is not a defense to the underlying felony, then it is not a defense to the CSC-I charge under MCL 750.250b(1)(c) [sic]."[3] *Id.* Applying these principles to the facts presented, the Court held that "because con-

---

[2] We note that, with regard to the second element, the *Wilkens* panel stated that the prosecutor had to prove that the sexual penetration occurred "during the commission of another felony." *Wilkens, supra* at 737. The *Pettway* panel stated that the sexual penetration had to occur "under circumstances involving the commission of any other felony." *Pettway, supra* at 815. The *Pettway* language is identical to the statutory language, while the language in *Wilkins* could be construed as too narrow a summation of the statutory language. The focus in *Wilkens* was not on interpretation of the phrase "occurs under circumstances involving the commission of any other felony," nor on the nexus between the sexual penetration and the underlying felony. Rather, the Court was concerned with whether a consent defense could be read into § 520b(1)(c). We shall explore the issue concerning the nexus between the sexual penetration and the underlying felony in detail later in this opinion.

[3] The Court was clearly referring to MCL 750.520b as there is no MCL 750.250b.

sent is not a defense to the underlying felony, producing child sexually abusive material, defendant cannot argue consent as a defense to his charges under MCL 750.520b(1)(c). Therefore, the trial court properly excluded consent as a defense." *Id.* at 737-738.

*Wilkens* distinguished *People v Thompson*, 117 Mich App 522; 324 NW2d 22 (1982), which held that it was error for the trial court not to instruct the jury on the defense of consent to a charge of violating § 520b(1)(c) where the underlying felony was kidnapping, on the basis that consent is a defense to a charge of kidnapping. *Wilkens, supra* at 737; *Thompson, supra* at 525-526.

The *Thompson* panel, relying on *People v Hearn*, 100 Mich App 749; 300 NW2d 396 (1980), in reaching its decision, stated:

> As in *Hearn*, defendant's theory here was that complainant had consented to sexual intercourse. Although *Hearn* involved commission of first-degree criminal sexual conduct by sexual penetration while armed with a weapon, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e), we believe that the reasoning used in *Hearn* is equally applicable where defendant is charged with commission of the crime by sexual penetration under circumstances involving commission of a felony, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c). [*Thompson, supra* at 526.]

As indicated in *Thompson*, *Hearn* addressed the issue whether consent was a viable defense to a charge of CSC I under MCL 750.520b(1)(e), the only elements of which are "first, that there be sexual penetration and, second, that the sexual penetration occur while the actor is armed." *Hearn, supra* at 753. The *Hearn* panel concluded that "[a]lthough the statute does not specifically address the defense of consent, its various provisions when considered together clearly imply the con-

tinuing validity of that defense." *Id.* at 755. Thus, *Hearn* determined that consent was a valid defense to a charge of CSC I pursuant to MCL 750.520b(1)(e) even though consent was not expressly referenced in the statute.

In support, *Hearn* quoted approvingly from *People v Khan*, 80 Mich App 605; 264 NW2d 360 (1978). *Hearn*, *supra* at 754. In *Khan*, the defendant had been convicted of CSC III predicated on sexual penetration accomplished by force or coercion. The Court stated in a footnote as follows:

> Although the statute is silent on the defense of consent, we believe it impliedly comprehends that a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither "mentally defective," "mentally incapacitated," nor "physically helpless," is not criminal sexual conduct. [*Khan, supra* at 619 n 5 (citations omitted).]

The *Khan* panel further noted that the statute speaks of force or coercion used to accomplish sexual penetration and consent would, of course, be a defense. *Id.*

It appears that *Wilkens* distinguished *Thompson* on faulty grounds, because the *Thompson* panel did not hold that the trial court erred in failing to give a consent instruction on the basis that consent was a defense to kidnapping. Rather, this Court in *Thompson* spoke in terms of consent to the sexual penetration. Indeed, the *Thompson* panel rejected the prosecutor's argument that the trial court's instruction on consent relative to the kidnapping charge was sufficient to protect the defendant's rights despite the court's failure to instruct on consent with respect to the CSC I charge. *Thompson, supra* at 526. Nevertheless, the problem with *Thompson* as well as *Hearn*, two cases in which the prosecution

did not proceed under any of the force or coercion provisions of § 520b(1)(c), is that they ultimately rely on *Khan*, in which force or coercion was the foundation for the CSC III charges. In the context of the CSC statutes, consent can be utilized as a defense to negate the elements of force or coercion. *People v Stull*, 127 Mich App 14, 19-21; 338 NW2d 403 (1983).[4] Also problematic in our view is that *Hearn* and *Thompson* rely on the proposition that a consent defense is implicit under the CSC statutes, which most certainly runs contrary to accepted principles of statutory construction. See *Tombs, supra* at 451; *Shinholster, supra* at 549; and *Roberts, supra* at 63. We further note that we are not bound by *Thompson*, *Hearn*, or *Khan* as they were all issued before November 1, 1990. MCR 7.215(J)(1). We are bound, however, by *Wilkens*, and although the *Wilkens* panel misconstrued *Thompson*, we are in agreement with its statutory analysis concerning § 520b(1)(c).

The plain and unambiguous language of § 520b(1)(c) does not require proof of force or coercion and does not otherwise provide for the defense of consent. We agree with *Wilkens* that the issue of consent relative to charges brought under § 520b(1)(c) can only arise in the context of the underlying felony because if a defendant successfully argues the existence of consent with respect to the underlying felony, assuming that consent is a legally recognizable defense, the prosecution cannot establish the second element of CSC I pursuant to § 520b(1)(c). Here, there is no dispute that the crime of delivery of a controlled substance is not subject to a

---

[4] CJI2d 20.27(1) provides: "There has been evidence in this case about the defense of consent. A person consents to a sexual act by agreeing to it freely and willingly, without being forced or coerced." The notes to this instruction and the decision in *Stull, supra* at 20-21, make clear that consent is an affirmative defense and that lack of consent is not an element of the crime to be proven by the prosecution.

consent defense; therefore, consent is not a defense to the particular CSC I charges on which defendant is being prosecuted. The problem with implying that a consent defense is viable under § 520b(1)(c) with respect to sexual penetration, other than the fact that making such an implication runs afoul of principles of statutory construction, is that it results in a judicial modification of the statutory language. The language of § 520b(1) encompasses all acts of "sexual penetration," and ruling in favor of defendant's position would alter this clear language by carving out an exception for certain acts of sexual penetration, i.e., consensual sexual penetration. The statute does not provide that it applies to "nonconsensual sexual penetration," but rather it simply refers to "sexual penetration."

We find further support for our position in *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005), in which our Supreme Court ruled:

> MCL 750.520d(1)(a) states that a person is guilty of third-degree criminal sexual conduct if the person engages in sexual penetration with another person and that person is at least thirteen but younger than sixteen years old. Accordingly, a thirteen-year-old child cannot legally consent to sexual penetration with another person *because sexual penetration of a thirteen-year-old child is automatically third-degree criminal sexual conduct*. [Emphasis added.]

Likewise, pursuant to the plain language of § 520b(1)(c), sexual penetration occurring "under circumstances involving the commission of any other felony" is also automatically criminal sexual conduct. The statute leaves no room for consent. Accordingly, we hold that consent is not a defense to the CSC I charges brought against defendant.[5]

---

[5] We recognize that affirmative defenses in criminal cases should typically be presented and considered at trial and that a preliminary

2006]      PEOPLE V WALTONEN      691

## C. THE NEXUS BETWEEN THE SEXUAL PENETRATION
### AND THE UNDERLYING FELONY

Next, we do believe that it is important to further examine the language of the statute to make clear that there must be a sufficient nexus between the underlying felony and the sexual penetration, otherwise there will be CSC I convictions in cases never intended by the Legislature to call for such a result. The lack of a nexus or connection appears to be the primary basis for the circuit court's ruling in the case at bar. As indicated above, MCL 750.520b(1)(c) punishes the act of sexual penetration when it "occurs under circumstances involving the commission of any other felony." This language was examined in *People v Jones*, 144 Mich App 1; 373 NW2d 226 (1985), in which the defendant accosted the victim as she was about to enter a car, telling her that if she did as requested she would not be injured. The victim dropped her purse, and the defendant picked it up. The defendant then directed the victim to a vacant lot where he sexually assaulted her. After completion of the sexual assault, the defendant refused the victim's request to return the purse, and he then took the car keys from the victim and drove her vehicle away. *Id.* at 3. The defendant was convicted, in

---

examination is not a trial. See *People v Martin*, 59 Mich App 471, 490; 229 NW2d 809 (1975), overruled on other grounds *Jackson Co Prosecutor v Court of Appeals*, 394 Mich 527 (1975). But considering that consent appeared to play a role in the circuit court's ruling and that the issue of consent would necessarily have arisen on remand had we not addressed the matter, it is appropriate to rule on the issue. Furthermore, if consent were a complete defense to the CSC I charges and consent was undisputed, it could be argued that there would be no probable cause to believe "that a felony was committed." See *Hill, supra* at 514. We do note that the victim's alleged consent to the sexual penetration in this case is not a given, considering that her ability to freely consent is questionable in light of the Oxycontin addiction. In light of our decision, however, further inquiry into the matter is unnecessary.

part, under § 520b(1)(c), and he argued for reversal on appeal on the basis "that the robbery did not occur until after the sexual acts had been completed because that is when he left the victim and permanently deprived her of her purse." *Id.* In construing § 520b(1)(c), this Court held:

> Even if we were to accept the argument that the statutory language must be construed to punish sexual acts occurring "during" the commission of any other felony, which we do not, defendant's own argument tacitly acknowledges the *continuum* of the armed robbery in focusing on the final act of defendant in leaving with his victim's purse after the sexual acts while ignoring the events preceding the sexual acts which included his taking possession of the purse while armed with the stick. The Legislature, however, did not attempt to narrowly define the coincidence or sequence of the sexual act and the other felony; rather it chose to address the increased risks to, and the *debasing indignities inflicted* upon, victims by the combination of sexual offenses and other felonies by treating the sexual acts as major offenses when they occur "under circumstances involving the commission of any other felony." [*Id.* at 4.]

We agree with the *Jones* panel that § 520b(1)(c) cannot be construed to require that the sexual penetration occur *during* the commission of the underlying felony; the language of the statute is not so limiting with respect to sequence and is more broadly drafted.[6] The key language of the statute is "occurs under circumstances involving," which does not necessarily demand that the sex act occur during the commission of the felony, although this generally will be the case. But

---

[6] Because *Wilkens* was not concerned with the issue addressed here, we give no weight to the panel's general recitation of the elements of the crime, in which recitation the Court summarized § 520b(1)(c) as indicating that the sexual penetration must occur during the commission of the felony. *Wilkens, supra* at 737.

the statutory language does require a direct interrelationship between the felony and the sexual penetration. Here, the delivery of controlled substances technically occurred after the sexual acts; however, the sexual acts were directly related to the delivery of the drugs because the only reason the victim engaged in sexual penetration was to acquire the drugs.[7] Stated somewhat differently, delivery of the drugs was part and parcel of the act of sexual penetration. Before and during the sexual penetration, the victim and defendant were operating under the knowledge and expectation that drugs would be delivered to the victim after the sexual act and only because of the sexual act. There existed a continuum of interrelated events. The evidence presented at the preliminary examination supported a probable-cause determination that the acts of sexual penetration occurred "under circumstances involving the commission of any other felony." MCL 750.520b(1)(c). Accordingly, the circuit court erred in quashing the information with regard to the CSC I charges.

### IV. CONCLUSION

Applying the plain and unambiguous language of MCL 750.520b(1)(c), we hold that the prosecution was required to submit evidence sufficient to establish probable cause to believe that defendant sexually penetrated the victim, that defendant committed the underlying

---

[7] As an example of a situation where such a direct relationship would not exist, we offer a scenario in which a defendant maintains a home full of illegal narcotics and engages in sexual relations with his spouse in the home, without any connection between the drugs and the sex acts. Although the sexual penetration is occurring during the commission of another felony, possession of controlled substances, it cannot be said that the sexual penetration is occurring under circumstances involving the commission of another felony.

felony, and that there existed a direct interrelationship between the felony and the sexual penetration, which does not necessarily require that the penetration occur during the commission of the felony. We further hold that the defense of consent is irrelevant to the inquiry because consent is not a defense to delivery of controlled substances and the Legislature has not provided any framework to otherwise permit a consent defense to unlawful sexual penetration under MCL 750.520b(1)(c).[8] Considering the evidence presented at defendant's preliminary examination, we conclude that the circuit court erred in quashing the district court's order binding defendant over for trial on four counts of CSC I.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[8] We cannot help but question whether the Legislature actually intended the result we reach here today, considering that a voluminous number of felonious acts can be found in the Penal Code, but we are curtailed by the language of the statute from reaching any other conclusion. In *Pettway, supra* at 817, this Court noted, "As the prosecution correctly argues, felony, as construed in the phrase 'any other felony', refers to any felony *other* than criminal sexual conduct." (Emphasis in original.) Technically, any time a person engages in sexual penetration in an adulterous relationship, a felony pursuant to MCL 750.30, he or she is guilty of CSC I under § 520b(1)(c). We believe that the Legislature, in drafting § 520b(1)(c), may have conceived of situations in which there was a violent felony involving an unwilling victim. We encourage the Legislature to take a second look at the statutory language if it is troubled by our ruling.