# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONALD NELSON, II,

Defendant-Appellant.

UNPUBLISHED
December 27, 2016

No. 332115
Chippewa Circuit Court
LC No. 15-013895-AR

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARY JOANNA PLIS,

Defendant-Appellant.

No. 332116
Chippewa Circuit Court
LC No. 15-013896-AR

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant Mary Joanna Plis was the mother of a two-year-old boy, and defendant Donald Nelson, II, was Plis's friend; he was not the child's father. The child was found unresponsive sometime around 9:30 a.m. on April 19, 2013, after having spent the night on a couch shared with Plis in Nelson's home, while Nelson slept alone on a nearby couch. The child was pronounced dead at the hospital a short time later following unsuccessful attempts at resuscitation. Plis and Nelson were charged with involuntary manslaughter, MCL 750.321. The prosecution's theory was that the child died of asphyxiation as a result of being overly swaddled in multiple blankets, with the intent to limit his rambunctious movements and allow defendants to sleep, and then placed on a soft and pliant couch next to Plis, creating a suffocation hazard given the excessive swaddling that effectively immobilized the child. The district court declined to bind defendants over to the circuit court for trial, finding a lack of probable cause showing that the offense of involuntary manslaughter had been committed or that defendants had committed the crime. On appeal to the circuit court, the court ruled that the district court had abused its discretion regarding the bindover decision, ignoring key evidence that established the requisite

-1-

probable cause. This Court granted defendants' applications for leave to appeal and consolidated the appeals. *People v Nelson*, unpublished order of the Court of Appeals, entered May 24, 2016 (Docket No. 332115); *People v Plis*, unpublished order of the Court of Appeals, entered May 24, 2016 (Docket No. 332116). We affirm the circuit court's ruling and hold that the district court abused its discretion with respect to its determination that probable cause to bind defendants over for trial was not established.

In *People v Henderson*, 282 Mich App 307, 312-313; 765 NW2d 619 (2009), this Court recited the standards of review implicated in regard to bindover decisions, observing:

> A district court's ruling that alleged conduct falls within the scope of a criminal law is a question of law that is reviewed de novo for error, but a decision to bind over a defendant based on the factual sufficiency of the evidence is reviewed for an abuse of discretion. In reviewing the bindover decision, a circuit court must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court. The decision to bind over a defendant may only be reversed if it appears on the record that the district court abused its discretion. This Court also reviews the bindover decision de novo to determine whether the district court abused its discretion. Thus, this Court gives no deference to the circuit court's decision. [Citations omitted.]

In a case involving a district court's decision to deny the prosecutor's request for a bindover, as here, our Supreme Court reiterated that "[a] district court's decision regarding a bindover is reviewed for an abuse of discretion," while noting that a district court would necessarily abuse its discretion if it made an error of law. *People v Feeley*, 499 Mich 429, 434; __ NW2d __ (2016). A lower court abuses its discretion when it elects an outcome that falls outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

With respect to preliminary examinations in general and a district court's role in the proceeding, this Court in *People v Waltonen*, 272 Mich App 678, 684; 728 NW2d 881 (2006), stated:

> The primary function of a preliminary examination is to determine whether a felony has been committed and, if so, whether there exists probable cause to believe that the defendant committed the felony. Probable cause requires evidence sufficient to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt. The magistrate, however, need not be without doubts regarding guilt. Following the conclusion of the preliminary examination, if it appears to the district court that there is probable cause to believe that a felony was committed and that the defendant committed it, the court must bind the defendant over for trial. MCL 766.13; MCR 6.110(E). [Citations omitted.]

In the context of a preliminary examination and the associated probable-cause standard, the prosecution need not prove each element of an offense beyond a reasonable doubt; rather, the prosecution must merely present some supporting evidence on each element. *Henderson*, 282

Mich App at 312. Circumstantial evidence, along with reasonable inferences arising from the evidence, can suffice to show probable cause. *Id.* The Michigan Supreme Court has "instructed examining magistrates to not refuse to bind a defendant over for trial when the evidence conflicts or raises reasonable doubt of the defendant's guilt." *People v Yost*, 468 Mich 122, 128; 659 NW2d 604 (2003); see also *Henderson*, 282 Mich App at 312 ("If the evidence conflicts or raises a reasonable doubt, the defendant should be bound over for trial, where the questions can be resolved by the trier of fact.").

Under the theory of involuntary manslaughter advanced by the prosecution in this case, it was necessary to show that defendants committed a lawful act in a grossly negligent manner that caused the death of another person. *People v Holtschlag*, 471 Mich 1, 17; 684 NW2d 730 (2004); M Crim JI 16.10. "To prove gross negligence amounting to involuntary manslaughter, the prosecution must establish: (1) defendant's knowledge of a situation requiring the use of ordinary care and diligence to avert injury to another, (2) her ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) her failure to use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." *People v Albers*, 258 Mich App 578, 582; 672 NW2d 336 (2003); see also M Crim JI 16.18.

In the instant prosecution, the following evidence was presented at the preliminary examination:[1] (1) evidence that the child was swaddled or wrapped in blankets by Nelson with Plis's knowledge; (2) evidence that Nelson, with Plis's awareness, placed the child on the couch against the back portion of the sofa, tucking one of the blankets covering the child into the cushion; (3) evidence that Plis slept on the outer edge of the couch's seat next to or against the child (head to feet); (4) evidence that the child was swaddled in the fashion described above so as to limit his movements in order to prevent the child from interfering with or disturbing defendants' sleep; (5) evidence that the couch was soft, making it easy for the child to sink into the sofa; (6) evidence that the child had facial friction abrasions consistent with being pressed against beaded embroidery on the couch; (7) medical evidence that two-year-old children typically have sufficient strength and agility to extricate themselves from and avoid situations that pose a suffocation hazard comparable to the circumstances that existed in this case; (8) evidence that both defendants had previously taken parenting classes; and (9) evidence that the child's autopsy produced findings consistent with death by asphyxiation or suffocation.

---

[1] Aside from the testimony of witnesses at the preliminary examination, the district court admitted into evidence various photographs, a transcript of an administrative hearing, limited to defendants' testimony at the hearing that was elicited after they were warned that it could be used against them in any future criminal proceedings, and a videotape of reenactments performed by each defendant at the behest of the police concerning the swaddling of the child and his placement on the couch, which reenactments employed the use of a doll. The administrative hearing pertained to an effort by Nelson to have his name removed from the Child Abuse and Neglect Central Registry.

This evidence clearly established probable cause that defendants had engaged in gross negligence in relation to the lawful act of putting the child down to sleep. Swaddling the two-year-old child with blankets to the point and for the purpose of immobilization and then placing him on the inner portion of a soft couch next to a soon-to-be sleeping adult and tucking him into the couch reflect a failure to use ordinary care and diligence to avert injury, which danger was easily avoidable and within defendants' knowledge. The direct and circumstantial evidence, and reasonable inferences arising from the evidence, was sufficient to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief that gross negligence was involved in this case. In reviewing the district court's ruling, it does not appear that the court found a failure to adequately show gross negligence, but to the extent that the court did make such a finding, the determination did not fall within the range of reasonable and principled outcomes in light of the record.[2]

The district court declined to bind defendants over for trial primarily, if not entirely, on the basis of a perceived failure to show that defendants' actions caused the child's death. The sole premise for this ruling was the district court's interpretation of the pathologist's testimony, wherein the pathologist indicated that the precise cause and manner of death was indeterminate. We hold that the district court misconstrued the pathologist's testimony, failing to take into consideration the whole of the testimony and undisputed circumstances surrounding the child's death.

The pathologist testified that his initial "findings were consistent with asphyxia type death, positional smothering type asphyxia death." The primary basis for this conclusion was the presence of pulmonary and cerebral edemas, along with the facial abrasions. He later changed the cause and manner of death to "indeterminate" because he had received information "that there was some suspicion of a potential drowning or something of that nature." More specifically, he testified, "I subsequently received additional information concerning apparently

---

[2] The district court did remark that the actor Rob Lowe had written an article about how "he used to wrap his child up like a burrito" until the child was "old enough to say [that he] d[i]dn't want to be wrapped up like that anymore." And the district judge commented that she used to swaddle her children, as taught to her by a nurse. Despite these observations that suggested that the district court approved of swaddling in general, the court did not expressly conclude that there was inadequate evidence showing gross negligence in this case relative to the particular manner in which the deceased child had been swaddled. Additionally, the district court did not state that the prosecution's case was unsustainable on the ground that there was insufficient evidence showing that defendants lacked knowledge of the potential hazard posed by their actions. Even had the district court reached such a conclusion, it would constitute error, given that "to the ordinary mind" it would have been apparent that a disastrous result could occur by over swaddling the child in blankets to the point of immobilization and then tucking him into a soft couch, with Plis laying up against the child. *Albers*, 258 Mich App at 582. A jury needs to resolve whether the child was actually improperly swaddled and immobilized, whether defendants had the requisite knowledge, and whether defendants' actions ultimately constituted gross negligence.

conflicting stories and some question about unexplained use of a bathtub and wet clothing and so forth." The pathologist explained that "drowning can also lead to pulmonary edema and cerebral edema," although a drowning would not necessarily have caused any abrasions. Thus, he "felt it best to list the . . . cause [and] . . . manner of death as indeterminate." The pathologist testified, however, that the cause of death was consistent with suffocation or asphyxiation.

The record reveals that the "wet clothing" referenced by the pathologist pertained to the child urinating on himself, as discussed by the emergency-room physician who treated the child. With respect to information concerning a bathtub, Plis had testified at the abuse-registry administrative hearing that there was a bathtub in Nelson's house, but that she had never used it, and there was testimony about Plis being in the bathroom when Nelson discovered that the child was unresponsive. There was no evidence even remotely suggesting that the child had drowned in a bathtub, and the pathologist plainly had misinformation about the child possibly drowning. Taking the drowning scenario out of the equation, the pathologist's opinion regarding the cause and manner of death was entirely consistent with the prosecution's theory of the case. Considering the record, the district court's ruling to the contrary was neither reasonable nor principled; there existed more than adequate evidence that defendants' actions caused the child's death.

Affirmed.

/s/ William B. Murphy
/s/ Amy Ronayne Krause