*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT BERNARD COLLINS,

        Defendant-Appellant.

UNPUBLISHED
October 6, 2022

No. 348957
Genesee Circuit Court
LC No. 18-042889-FC

## ON REMAND

Before: REDFORD, P.J., and RIORDAN and RICK, JJ.

PER CURIAM.

After this Court affirmed defendant's convictions of unlawful imprisonment, MCL 750.349b, assault with intent to do great bodily harm less than murder, MCL 750.84, attempted assault with intent to do great bodily harm less than murder, 750.92(2), felonious assault, MCL 750.82, domestic violence, MCL 750.81(2), and two counts of first-degree criminal sexual conduct (CSC-I) while armed with a weapon, MCL 750.520b(1)(e), defendant sought leave to appeal to our Supreme Court, which in lieu of granting leave, vacated Section III of this Court's judgment in which we affirmed the trial court's admission of other-acts evidence under MRE 404(b), and ordered reconsideration in light of *People v Denson*, 500 Mich 385; 902 NW2d 306 (2017), but in all other respects denied defendant's application for leave to appeal. *People v Collins*, ___ Mich ___; 964 NW2d 589 (2021). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

At defendant's trial, the prosecution presented the complainant's preliminary examination testimony in which she testified that, after some marital quarreling, defendant struck her in the face, threatened and cut her with a box cutter, choked her, then wrapped an extension cord around her neck, and issued death threats. When she attempted to flee, defendant pursued her, she fell down, and defendant forced her back into the bedroom and sexually assaulted her. Hours later, after defendant fell asleep, she left home and reported to a hospital emergency room.

Before trial, the prosecution gave notice of its intent to seek the admission of other-acts evidence by generally reciting the permissible purposes as grounds for its admission which drew objections from defendant. The trial court held a pretrial hearing at which the prosecution explained its rationale for the admission of the evidence. On the first day of trial, the trial court ruled that the prosecution could present evidence that defendant committed a violent act of criminal sexual conduct in 1990 against a woman in the neighborhood in which he lived. Because the woman was deceased, the prosecution requested that her preliminary examination testimony be admitted and defendant's trial counsel stipulated to its admission.

In our previous opinion, we summarized the woman's preliminary examination testimony as follows:

> In that earlier proceeding, ST testified that defendant, whom she knew only as someone who lived across the street who had once asked to borrow her lawnmower, appeared on her porch at 4:00 a.m. one morning, told her to "shut up" when she asked through a closed window what he was doing, then broke her window. ST ran to her kitchen and called the police, but defendant came to a side door near the kitchen, and "started breaking the glass out of that," then reached through that opening to begin unlocking the door, upon which she hung up her phone and ran upstairs and grabbed her rifle. ST testified that the police called back, and from her upstairs bedroom phone, while continuing to hear the sounds of breaking glass, she reported that a man was breaking in. When things seemed to have quieted down, ST entered her hallway, where she saw defendant "more or less crawlin' up the stairs." ST testified that she attempted to raise her rifle, but defendant pulled it away and threw it on the floor, then pushed her into her bedroom and started forcibly disrobing her. Over her protestations, defendant forced her onto the bed, twice struck her in the face, pulled his pants down, forced her to perform fellatio on him, then forced her to endure sexual intercourse. The police then arrived and apprehended defendant.[1]

## II. STANDARD OF REVIEW

In *Denson*, 500 Mich at 396-397 (quotation marks and citations omitted), our Supreme Court stated the applicable standards of review as follows:

> A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion. However, whether a rule or statute preclude admission of evidence is a preliminary question of law that this Court reviews de novo. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law.
>
> When we find error in the admission of evidence, a preserved nonconstitutional error is presumed not to be a ground for reversal unless it

---

[1] *People v Collins*, unpublished per curiam opinion of the Court of Appeals, issued December 3, 2020 (Docket No. 348957), p 5.

affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict. This inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence. In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error.

## III. ANALYSIS

Defendant argues that the trial court erred by admitting under MRE 404(b) this evidence of his prior bad acts because he contends that the facts of this case are dissimilar in almost every respect from the 1990 incident in which he sexually assaulted a stranger. We disagree.

Under MRE 404(a), evidence "of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," with few exceptions. "The general rule under MRE 404(b) is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *Denson*, 500 Mich at 397 (citation omitted). MRE 404(b)(1), however, permits the admission of other crimes, wrongs, or acts as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *Denson*, 500 Mich at 398, our Supreme Court reiterated the standard for admission of other-acts evidence that it set forth in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

The Court explained that the three-part test requires the prosecution to establish a proper noncharacter purpose for the admission of the other-acts evidence beyond merely showing that the other act has relevance for demonstrating the defendant's inclination for wrongdoing. *Id*. at 398. The Court warned that trial courts must exercise discernment to differentiate between a prosecution's mere mechanical recitation of a permissible purpose and an explanation that sufficiently justifies admission of the evidence under MRE 404(b). *Id*. at 400. Trial courts must "vigilantly weed out character evidence that is disguised as something else." *Id*. (quotation marks and citation omitted). The Court directed that, "in order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court

must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test." *Id*. (citations omitted).

Our Supreme Court explained that logical relevance, as determined through application of MRE 401 and MRE 402, consists of two components, materiality and probative value. To be *material*, the evidence must be related to any fact that is of consequence to the action, i.e., a fact that is relevant to an element of the charged offense or a defense in issue that must be proven. *Id*. at 400-401. To be *probative*, the evidence must tend "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 401-402 (quoting MRE 401). The Court clarified that MRE 404(b) serves to screen out evidence of defendant's propensity to commit the crime at issue by requiring the prosecution to establish that the evidence is relevant and probative of an ultimate issue in the case and not presented for the jury to make an impermissible inference of the defendant's character. *Id*. at 402. The Court stated:

> In evaluating whether the prosecution has provided an intermediate inference other than an impermissible character inference, we examine the similarity between a defendant's other act and the charged offense. In this case, we note that the prosecution sought to admit the other-acts evidence particularly based on the alleged similarities between the 2002 incident and the charged offense. The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence.
>
> * * *
>
> This principle is clear. If the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a "striking similarity" between the two acts to find the other act admissible. When the prosecution's theory of relevancy is not based on the similarity between the other act and the charged offense, a "striking similarity" between the acts is not required. [*Id*. at 402-403 (citations omitted).]

In *Denson*, our Supreme Court analyzed the prosecution's use of evidence of the defendant's prior commission of an unrelated assault of an unrelated individual during an altercation related to a drug debt to rebut the defendant's claims of self-defense and defense of others in relation to a violent altercation between the defendant and his 15-year-old daughter's boyfriend upon finding them in her bedroom engaged in sexual activity which the defendant claimed he believed to be a sexual assault. Our Supreme Court explained that:

> the evidence of the 2002 incident was not probative of anything other than defendant's allegedly bad character and propensity to commit the charged offense. As noted earlier in this opinion, the prosecution built a theory of relevance centered upon the supposed similarity between the 2002 incident and the charged offense to rebut defendant's claims of self-defense and defense of others . . . [but] failed to show such similarity.

-4-

The 2002 incident and the charged offense bore notable differences. The 2002 incident involved a completely different situation and a victim who was completely unrelated to the charged offense. The 2002 incident consisted of a seemingly calculated attack to recover a drug debt, whereas the instant offense involved an allegedly spontaneous reaction by defendant after he witnessed his daughter and Woodward in a state of partial undress. The 2002 incident did not involve a claim of self-defense or defense of others, while the current case clearly does.

Indeed, the only similarity between these two incidents is that both were assaults allegedly committed by defendant. Rather than being sufficiently similar and providing a proper noncharacter purpose for admission into evidence, the 2002 incident served solely to demonstrate defendant's propensity for violence. [*Id*. at 406-407 (citations omitted).]

The Court concluded that the other-acts evidence merely masqueraded as evidence intended to rebut the defendant's claims of self-defense and defense of others when in actuality it lacked probative value and constituted impermissible character evidence. *Id*. at 408. Having found that the trial court erred by admitting the evidence, our Supreme Court next considered whether the admission of the evidence constituted harmless error. Under that standard, "a preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Id*. at 409 (quotation marks and citations omitted). The Court explained that it focused on the nature of the error and assessment of "its effect in light of the weight and strength of the untainted evidence." *Id*. at 410 (quotation marks and citation omitted). Because the error was not harmless, the Court reversed the defendant's conviction and remanded the case to the trial court for a new trial.

In this case, as required under MRE 404(b)(2), the prosecution filed a notice of intent to present evidence that defendant committed a sexual assault in May 1990, but the record indicates that the notice merely provided a generic, mechanical recitation of permissible purposes. The notice prompted defendant to object on the ground that his other acts were substantially dissimilar and that the prosecution sought the admission of the evidence for an improper propensity purpose. The prosecution filed a response that explained that the jury would hear defendant's recorded jail telephone calls with the victim in which he told her that because she did not say "no," he could not be charged with raping his wife, which the prosecution argued indicated that a consent defense would be before the jury. The prosecution argued that such a consent defense related to the two counts of criminal sexual conduct, and the other-acts evidence would show that consent did not occur because defendant's use of assault and scaring a woman to engage in sexual intercourse with him did not render the alleged consent voluntary.

The prosecution asserted that the other-acts evidence would establish that defendant used a common scheme or plan in doing the act by scaring female victims, making threatening remarks to them, assaulting them by striking the head and face, by chasing the female victims throughout the residence when they attempted to escape, and then demanded sexual activity. The prosecution contended that it established a proper purpose for the admission of the evidence under MRE 404(b).

The trial court conducted a hearing on defendant's objection to the admission of the other-acts evidence and the prosecution provided the following rationale to further justify the admission of the evidence:

> [T]he jury is going to hear of consent. Whether it is going to be argued by defense or not, the evidence is going to be before a jury. So one of the 404(b) proper purposes is absence of mistake or accident. We are arguing that there is no mistake or accident in just saying I believe this victim was consenting because the defendant has, and again, that is where the pattern, scheme or common system of doing that comes in, he has knowledge that assaulting and scaring a woman prior to sexual intercourse does not render that consent voluntarily given.
>
> The intent will show that he intended to have sex with a woman he wanted to have sex with regardless of her desire to engage in sex. And there is a common scheme or plan. He scared both victims. He made threatening remarks to both victims. He assaulted both victims by striking them in the face or head area. Both victims were able to escape from him at some point, and he chased both of the victims around the house in effort to prevent them from fleeing and then he demanded sexual activity.
>
> So there actually is, despite the fact that in one the victim was his spouse and the other victim was his neighbor, these females are both known to him and he did employ somewhat of a common system. Yes, in this one, he violently used weapons against the victim. However, there is still the level of violence and the attitude of I'm going to engage in sexual activity with this person whether she wants to or not.

The record reflects that the trial court considered the charged offenses and observed that the intent element constituted a critical issue in this case because the jury had to decide whether defendant engaged in consensual sexual conduct or intended to assault the victim. The record indicates that the trial court recognized the dissimilarities between the 1990 incident and the facts of this case, in that the victim in the 1990 incident was a neighbor and defendant broke into her house and forced her to engage in sexual acts. The trial court observed that the incident had not been a domestic violence situation but a violent rape of a stranger. The trial court concluded that, under the circumstances of that incident, neither intent nor defendant's identity had been issues. The trial court noted that the present case involved domestic violence where proof of intent might be an issue because of the marital status of defendant and the victim and what he said on the phone afterward to her. The trial court found that the prosecution had to convince the jury that defendant intended to assault and forcibly rape his wife. The trial court concluded that the 1990 incident concerned defendant's interaction with a woman with the intent to rape her and that intent feature of the incident had relevance to the allegations in the present case. The trial court stated:

> This helps us to say, hey, wait a minute, no, that's not right. When he says in the phone calls that this is just sex and this is just consent, we know that that's not true because in a prior situation where it wasn't a domestic relationship, okay, his intent was clear. So, that's a completely different purpose than propensity.

The trial court concluded that such constituted a proper purpose for the admission of evidence of the 1990 incident. The trial court then analyzed whether that evidence had probative value not substantially outweighed by the risk of unfair prejudice under MRE 403, and it concluded that the evidence would not be more unfairly prejudicial than probative.

Our Supreme Court explained in *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000), that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." The Court stated that "[g]eneral similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id*. at 64. For admissibility, there must be a concurrence of common features of the other-acts evidence and the charged acts which manifests a general plan. *Id*. at 64-65. The other-acts evidence must support the inference that the defendant employed the common plan in committing the charged offense. *Id*. at 65-66. In *Denson*, our Supreme Court reiterated this fundamental principle and clarified that the other-acts evidence should bear striking similarity.

The question before us is whether commonality of the circumstances of the other-acts evidence and the charged crimes in this case are sufficiently similar to establish intent, a scheme, plan, or system in doing an act. Defendant urges this Court to focus on certain dissimilar facts to rule the other-acts evidence inadmissible. Defendant asserts that dissimilarities between the 1990 incident and the charged offenses dictate the outcome. Analysis of his argument reveals that he essentially focuses on the fact that the 1990 incident occurred between strangers and involved an early morning home invasion, not an incident of domestic violence between a married couple in their own home. He asserts that the sexual conduct in this case occurred after defendant's rage wound down and the victim believed that he felt sorry for her, intimating that the conduct may have been consensual. Defendant contends that "[a]ny motivation or intent regarding a violent sexual assault of a stranger bears no relationship to anything at issue in this case."

The prosecution argues that this Court should focus on other factual aspects which demonstrate striking similarities between the 1990 incident and the charged offenses which demonstrate a common scheme or plan. The prosecution points to the fact that defendant "scared both victims," "made threatening remarks to both victims," and "assaulted both victims by striking them in the face or head area," defendant "chased both of the victims around the house in effort to prevent them from fleeing and then he demanded sexual activity." The prosecution argues that the earlier incident and the conduct giving rise to the charged offenses in this case both involved women from whom defendant desired sex and intended to satisfy his urges without regard for their lack of consent, he used threats and violent physical acts against both victims to inflict fear and force submission, and when the victims momentarily escaped he chased them down and then demanded and forced upon them sexual activities.

For the other-acts evidence to be admissible, the three-part test required the prosecution to establish a proper noncharacter purpose for the admission of the other-acts evidence and the trial court had to closely scrutinize the logical relevance of the evidence, i.e., the materiality and probative value of the evidence to the determination of the charged offenses. As our Supreme Court explained, to be material, the evidence must be related to any fact that is of consequence to the action, i.e., a fact that is relevant to an element of the charged offense or a defense in issue that

must be proven. *Denson*, 500 Mich at 400-401. To be probative, the evidence must tend "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 401-402 (quoting MRE 401).

In this case, defendant faced multiple felony charges. The prosecution charged defendant with unlawful imprisonment in violation of MCL 750.349b. In *People v Bosca*, 310 Mich App 1, 18-19; 871 NW2d 307 (2015), this Court stated:

The elements of unlawful imprisonment are delineated in MCL 750.349b as follows:

(1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

(a) The person is restrained by means of a weapon or dangerous instrument.

(b) The restrained person was secretly confined.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

The term "restrain" is defined within the statute as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). Restraint need not occur "for any particular length of time." MCL 750.349b(3)(a).

The prosecution also charged defendant with assault with intent to do great bodily harm less than murder in violation of MCL 750.84. The elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005), quoting *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).[2] The prosecution charged defendant with felonious assault in violation of MCL 750.82, which offense's elements are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Defendant faced the charge of domestic violence, MCL 750.81(2), which requires proof "that the defendant and the victim are associated in one of the ways set forth in MCL 750.81(2) . . . and that the defendant either intended to batter the victim or that the defendant's unlawful act placed the victim in reasonable apprehension of being battered." *People v Corbiere*, 220 Mich App 260, 266; 559 NW2d 666 (1996). Battery has been defined as " 'an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.' " *People v*

---

[2] The prosecution also charged defendant of attempted assault with intent to do great bodily harm less than murder under MCL 750.92(2) which prescribes punishment for a defendant's attempted commission of offenses prohibited by law.

*Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004), quoting *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998). The prosecution also charged defendant with two counts of CSC-I in violation of MCL 750.520b(1)(e) which provides:

>    (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

>    *    *    *

>    (e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

This charged offense required the prosecution to prove two elements, (1) that defendant engaged in sexual penetration, and (2) that defendant was armed when the sexual penetration occurred. *People v Waltonen*, 272 Mich App 678, 687; 728 NW2d 881 (2006).

Analysis of the elements of these offenses reveals that certain of their elements coincide with each other including the use of force, restraint, violence, threats of violence, threats of harm, intentional acts against a person without the person's consent, and intentional unconsented contact. The other-acts evidence of the 1990 incident featured conduct strikingly similar to the various elements the prosecution had to prove to establish the violation of the charged offenses in this case.

The other-acts evidence of the 1990 incident, when viewed in relation to the required elements for proof of the charged offenses in this case, establishes that the evidence was logically relevant, i.e., both material, respecting the necessary elements requiring proof, and probative of defendant's intent and common scheme or plan for commission of the charged offenses against women without their consent. The 1990 incident and the conduct giving rise to the charged offenses in this case both involved women from whom defendant wanted sex without regard for their lack of consent, when the victims sought to escape, he chased them down and used threats and violent physical acts to restrain them against their will, he inflicted fear to force their submission, and he demanded unconsented sexual activities, then forced them to perform sexual activities. Both events are strikingly similar in these several ways, particularly to prove defendant's intent to force women through violent means to engage in unconsented sexual conduct. That some dissimilarities exist, does not make the otherwise admissible evidence inadmissible. The evidence was offered for a proper noncharacter purpose, it was relevant, i.e., material to an element of the charged offenses and probative of an ultimate issue, and more probative than unfairly prejudicial. The other-acts evidence supported the inference that defendant intended to obtain unconsented sex by means of employing a strikingly similar plan, scheme, or system to commit the sexual assaults in this case.

The record reflects that the trial court appropriately conducted the requisite balance test under MRE 403 to determine that the other-acts evidence's probative value outweighed its potential for unfair prejudice. The trial court also gave a limiting instruction to the jury directing the jury regarding the proper use of the other-acts evidence admitted in this case. The trial court did not commit an error of law and its admission of the other-acts evidence fell within the range of reasonable and principled outcomes under the circumstances presented in this case. Therefore,

we hold that the trial court did not abuse its discretion by admitting the other-acts evidence in this case.[3]

Even if we assume that the trial court abused its discretion by admitting the other-acts evidence, the prosecution presented substantial untainted documentary and testimonial evidence of defendant's commission of the charged offenses sufficient to prove defendant's guilt beyond a reasonable doubt. The admission of the other-acts evidence in this case, therefore, did not have an outcome-determinative effect. Defendant has failed to establish entitlement to relief.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan

---

[3] We also note that this evidence would have been admissible under MCL 768.27b because, in this criminal action, defendant was accused of offenses involving sexual assault and the other-acts evidence pertained to defendant's other acts of sexual assault that were reported to law enforcement within five years of the date of that sexual assault. Evidence is admissible under MCL 768.27b even if the evidence is not admissible under MRE 404(b), even for propensity purposes, which MRE 404(b) generally prohibits. The Michigan Legislature has determined that MRE 404(b) should not apply when a defendant is accused of sexual assault or domestic violence. See *People v Watkins*, 491 Mich 450, 470-471; 818 NW2d 296 (2012), *People v Cameron*, 291 Mich App 599, 610-612; 806 NW2d 371 (2011). In other words, even assuming the evidence was not admissible under MRE 404(b), defendant cannot show how such error could have had any effect, let alone outcome-determinative effect, when the evidence was admissible under MCL 768.27b(1) "for any purpose for which it [was] relevant."