*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

ANDRE DWAIN TAYLOR,

        Defendant-Appellee.

UNPUBLISHED
November 9, 2023

No. 360535
Wayne Circuit Court
LC No. 19-000348-01-FC

ON REMAND

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

This case returns to this Court on remand for review of the prejudice prong of defendant's ineffective-assistance-of-counsel claim under *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Taylor*, ___ Mich ___, ___; 991 NW2d 192, 193 (2023) (*Taylor II*). We again reverse the trial court's order granting defendant's motion for a new trial and remand for proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

We summarized the underlying facts in our earlier opinion:

> This case arises from a November 2017 sexual encounter involving defendant and the victim. At that time, the victim worked at a bar in Detroit, Michigan where defendant was a patron. Defendant offered the victim a ride home after her shift ended, which the victim accepted. They stopped at a convenience store and defendant purchased condoms and other items. The pair went on to the victim's apartment, where they had sexual intercourse. After the victim asserted that defendant had sexually assaulted her in the apartment, defendant was arrested and charged.

During defendant's jury trial, the trial court questioned defendant at length whether he intended to testify on his own behalf. Defendant asserted he would not testify at trial and would instead rely on his right to remain silent. In response, the trial court explained to defense counsel that it would not be able to instruct the jury on the defense of consent because, absent defendant's testimony, there was no evidence in the record suggesting the victim consented to the sexual intercourse. Defendant was convicted as noted.[1]

Defendant later moved for a *Ginther*[2] hearing, arguing he was entitled to a new trial because defense counsel was ineffective. According to defendant, defense counsel deprived him of a defense by failing to inform him that the jury would not be instructed on consent because defendant did not testify that the victim consented. The trial court agreed, finding defense counsel deprived defendant of his right to counsel by failing to communicate that without his testimony, the jury would not be instructed on consent. The trial court entered an order granting defendant's motion for new trial. This appeal followed. [*People v Taylor*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket No. 360535) pp 1-2 (*Taylor I*) (footnote added).]

The prosecution argued on appeal that the trial court erred in granting defendant's motion for a new trial. *Id*. at 2-3. We agreed and reversed the trial court's order because defendant failed to show he was prejudiced by counsel's performance. *Id*. at 3.

Defendant sought leave to appeal with our Supreme Court. Our Supreme Court remanded the case to this Court, stating:

The Court of Appeals reversed the trial court reasoning "[t]he trial court granted defendant's motion for a new trial, in part, because defendant was presumptively prejudiced by counsel's performance." However, although the trial court did mention *United States v Cronic*, 466 US 648[; 104 S Ct 2039; 80 L Ed 2d 657] (1984), it explicitly wrote "[b]ecause the *Strickland* [*v Washington*, 466 US 668 (1984),] test applies to Defendant's claim, Defendant must demonstrate [defense counsel's] performance fell below an objective standard of reasonableness and, in addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that but for counsel's deficient performance, a different result would have been reasonably probable." (citation and quotation

---

[1] "Defendant was convicted by a jury of three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b)[ (force or coercion)], and one count of assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g(1)." *People v Taylor*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket No. 360535) p 1 (*Taylor I*). The jury acquitted defendant of the counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1) (multiple variables) and assault by strangulation, MCL 750.84.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

marks omitted). Among the trial court's extensive prejudice analysis, it found "By advising and ostensibly convincing the Defendant that he did not need to testify in [sic] on his own behalf [defense counsel] deprived the Defendant of the ability to raise his only viable defense to allegations in this case consent. In doing so not only was she unable to argue that the sexual acts described by the complaining witness and supported by the medical records and DNA evidence was consensual she precluded the jury from being instructed on defense of consent." On remand, the Court of Appeals shall review the trial court's prejudice analysis under *Strickland*. [*Taylor II*, ___ Mich at ___; 991 NW2d at 193.]

## II. PREJUDICE

Having considered the prejudice analysis under *Strickland*, we again conclude the trial court erred in granting defendant's motion for a new trial.

## A. STANDARD OF REVIEW

"A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 671-672 (citations omitted).

## B. LAW AND ANALYSIS

As stated in *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018):

Under *Strickland v Washington*, establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations omitted.]

"Defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments. Counsel must make an independent examination of the facts, circumstances, pleadings and laws involved[.]" *People v Grant*, 470 Mich 477, 486-487; 684 NW2d 686 (2004) (quotation marks and citation omitted). "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight." *Dixon*, 263 Mich App at 398 (quotation marks and citations omitted). "Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *People v Yeager*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 164055); slip op at 7.

Regarding prejudice, a defendant is "not required to show that, but for counsel's deficient performance, he *would have been acquitted*. Rather, prejudice is established where a defendant shows that but for counsel's deficient performance, there is a *reasonable probability* that the outcome would have been different." *People v Heckaman*, 510 Mich 1064, 1064 (2022) (quotation marks and citation omitted).

Here, the trial court found that defense counsel was ineffective by failing to advise defendant that his decision not to testify would negatively affect the defense of consent and preclude the applicable consent jury instruction.[3] The trial court found that defendant's only defense was consent, and defense counsel incorrectly believed she could argue that the sexual encounter was consensual, despite there being no evidence of consent admitted at trial. The trial court stated that defense counsel chose to focus on the aggravating element of strangulation, but her strategy did not address the element of consent. Defense counsel explained at the *Ginther* hearing that she had done "a pretty good job presenting consent without saying the word consent...," but the trial court found that her testimony clearly indicated that she did not understand the legal concept of consent.

Applying *Strickland*, the trial court concluded that defense counsel's advice to defendant not to testify was not based on trial strategy, but on a misunderstanding of the law. The trial court further stated that defense counsel "deprived the Defendant of the ability to raise his only viable defense to the allegations in this case[:] consent." As a result, defense counsel was unable to argue that the sexual acts were consensual and precluded the jury from being instructed on the defense of consent and burden of proof on the issue of consent. Defense counsel also failed to explain this to defendant. The trial court found that defense counsel's advice was based on a misunderstanding of the law. The trial court also noted defense counsel's mistaken belief that defendant's prior conviction from Ohio could be used to impeach him if he testified. With regard to the prejudice prong, the trial court concluded that defendant:

> forwent the only available evidence to potentially successfully defend himself against the charges brought by the people that being his own first-hand account of what occurred in that apartment in the city of Detroit on November 28, 2017 testimony. Under the circumstances it is clear that there is a reasonable probability the outcome of the proceeding could have been different had the jury been able to hear evidence consistent with the only available defense under the facts and circumstances of this case.

Because defendant did not testify, the trial court found there was no evidence of consent, therefore it did not instruct the jury regarding the defense of consent.

"In the context of the CSC statutes, consent can be utilized as a defense to negate the elements of force or coercion." *People v Waltonen*, 272 Mich App 678, 689; 728 NW2d 881 (2006). "[C]onsent is an affirmative defense and that lack of consent is not an element of the crime

---

[3] M Crim JI 20.27 is the model jury instruction regarding consent. It provides, in relevant part: "There has been evidence in this case about the defense of consent. A person consents to a sexual act by agreeing to it freely and willingly, without being forced or coerced." M Crim JI 20.27(1).

to be proven by the prosecution." *Id*. at 689 n 4. As an affirmative defense, a defendant must prove consent by a preponderance of the evidence. See *People v Likine*, 492 Mich 367, 405 n81; 823 NW2d 50 (2012) ("Although the prosecution must prove the elements of the crime beyond a reasonable doubt, the defendant bears the burden of proving the affirmative defense by a preponderance of the evidence."). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013).

As an initial matter, we note that defendant was not prejudiced simply because defense counsel advised him not to testify. Defendant claims he was entirely precluded from presenting a consent defense because counsel advised him not to testify. He asserts that had he testified, he would have presented evidence of the victim's consent, and would have received the jury instruction regarding consent. But even if defendant's assertions are correct, this Court held in *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (citation omitted), that a sexual force instruction "implicitly required the jury to find that the complainant did not consent to sexual intercourse before it could find defendant guilty." In this case, the trial court instructed the jury: "It is enough force if the defendant . . . used force to induce the victim to submit to a sexual act, or to seize control of the victim, in a manner facilitating commission of the sexual act, without regard to the victim's wishes." As we recognized in *Matuszak*, the jury impliedly considered consent when it considered the sexual penetration instruction.

Nonetheless, the trial court found that defendant was prejudiced by defense counsel's advice to defendant to not testify and thereby eliminate consent as a defense. Thus, the question in this case is whether there is a reasonable probability that defendant's testimony, along with the consent instruction, would have resulted in a different outcome.

The prosecution makes several arguments why defendant's testimony would not have resulted in a different outcome. First, the prosecution argues defendant's testimony would have corroborated evidence that he put his hands on the victim's neck, bolstering the prosecution's theory that the victim was strangled. Second, the prosecution opines the jury would have had to discount the testimony of the victim and the sexual assault nurse examiner ("SANE") in order to find the encounter was not consensual. And finally, the prosecution argues that defense counsel was able to effectively present the consent theory to the jury without the jury instruction.

In his statement to police, defendant acknowledged that he put his hands on the victim's neck. However, he characterized his conduct as just "sexual," he was not choking her, and he was telling her how beautiful she was. He further explained that the sex was "in the middle between gentle and rough." Considering his statement as a whole, we disagree that defendant's testimony would have necessarily bolstered the prosecution's theory of strangulation. If believed, defendant's testimony would have lent support to a consent theory and offered additional support to expert testimony offered by the defense that the marks on the victim's neck were not necessarily from strangulation.

Further, while defense counsel presented a "consent theory" implicitly, defendant's testimony may have strengthened his defense. We note that defense counsel's closing referred to the victim's "voluntary choices," attempted to discredit the victim, and pointed out the

-5-

inconsistencies in her testimony and the lack of evidence that she tried to get away or call anyone. But this conduct did not necessarily establish the victim's consent to sexual intercourse. Testimony from defendant that the victim consented to the sexual encounter would likely have made a stronger defense. The jury may still have believed the victim and the SANE, but defendant is only required to show a reasonable probability that defense counsel's failure to present his testimony affected the outcome of the trial. We cannot say with confidence that the jury would have concluded that the victim did not consent had it considered defendant's testimony. Thus, defendant has established there is a reasonable probability of a different outcome.

Nonetheless, defendant cannot show that defense counsel's performance was objectively deficient under *Strickland*. As noted, defense counsel believed that she could still skillfully mount a consent argument without defendant's testimony. The trial court explained to defense counsel that, without evidence of consent, she could not argue consent. Defense counsel testified at the *Ginther* hearing that she "did a pretty good job presenting consent without saying the word consent." While the trial court found defense counsel's maneuverings at trial reflected a misunderstanding of the law, defense counsel "argue[d] the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case[.]" *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Defense counsel fully understood that she could not say the word consent and that the consent instruction would not be given. She instead argued that the victim's voluntary actions and the surrounding circumstances showed that the prosecution had failed to prove force or coercion. In addition, despite defendant's testimony at the *Ginther* hearing, the record establishes that defendant was fully apprised that the consent instruction would not be given. The trial court meticulously informed defendant that it was his choice alone whether to testify, but that if he elected not to testify, the jury would not be given a consent instruction, and that his attorney would not be allowed to argue consent.

With the benefit of hindsight, we agree with the trial court that defendant's testimony, combined with the consent instruction, may very well have been helpful to the defense. But defense counsel's decisions are not to be viewed in this context. Defense counsel testified that she believed that defendant's testimony would do more harm than good. She testified that while defendant's written statement asserted that the sexual encounter was consensual, it had "some negatives" that would have supported the victim's testimony. Counsel was particularly concerned that defendant had admitted in his police statement that he had put his hands around the victim's throat. Defense counsel instead sought to explain the victim's injuries by calling a medical expert who opined that the bruises were not from strangulation. Defense counsel also focused on the victim's credibility, her mental stability, and her use of drugs. We note that defense counsel's strategy successfully secured an acquittal on the more serious CSC-I and assault by strangulation charges.

We conclude that defense counsel's strategy was not objectively unreasonable. There is a possibility that defense counsel's efforts to seed reasonable doubt would have been undermined had the jury found defendant not credible. Defense counsel made a reasonable, calculated decision after considering the pros and cons of defendant testifying and, contrary to the trial court's finding, was not based on a misunderstanding of the law. In concluding that defense counsel was ineffective, the trial court improperly reviewed defense counsel's decision with the benefit of hindsight and second-guessed defense counsel's strategy.

The trial court also found that defense counsel mistakenly believed defendant could be impeached with a prior conviction. At the *Ginther* hearing, it was established that this other conviction had actually occurred after the conviction in this case. Thus, defense counsel was indeed mistaken that it was a prior conviction that could be used to impeach defendant. Advice based on a misunderstanding of law can be objectively unreasonable. See *Yeager*, ___ Mich at ___; slip op at 11. However, this was not the primary reason that defense counsel advised defendant not to testify. Even without the other conviction, it appears that defense counsel would not have advised defendant to testify.

In sum, while there is a reasonable probability that the outcome of the trial would have been different had defendant testified, defendant cannot overcome the strong presumption of sound trial strategy and establish that defense counsel's conduct was objectively deficient. The trial court therefore erred by concluding that defense counsel was ineffective and abused its discretion by granting defendant's motion for a new trial on the basis of ineffective assistance of counsel.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett