*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REMON MONTEAU HUMPHREY,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2024

No. 362770
Shiawassee Circuit Court
LC No. 2022-006654-FH

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of third-degree criminal sexual conduct (CSC-III) (penile-vaginal penetration of a mentally incapacitated or physically helpless victim), MCL 750.520d(1)(c), and furnishing alcohol to a minor, MCL 436.1701(1). Defendant was sentenced to serve concurrent terms of 57 months to 15 years in prison for his CSC-III conviction and 53 days in jail for his furnishing-alcohol conviction. We affirm.

## I. CONSENT INSTRUCTION

First, defendant argues that the trial court's refusal to issue an instruction on the affirmative defense of consent deprived him of his right to a properly instructed jury.

This Court reviews de novo questions issues involving the interpretation and application of jury instructions. *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). This Court reviews for an abuse of discretion the court's determination regarding whether an instruction should apply to the facts of a case. *Id*. The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018).

"A defendant is constitutionally guaranteed the right to a 'meaningful opportunity to present a complete defense.' " *People v Gafken*, 510 Mich 503, 515; 990 NW2d 826 (2022), quoting *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986). Instructional errors can infringe upon the defendant's right to present a defense. *People v Leffew*, 508 Mich 625, 643-644; 975 NW2d 896 (2022). A defendant is entitled to a jury instruction if the defendant

-1-

requests an instruction on a theory or defense that is supported by the evidence. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The defendant has the burden to establish that some evidence supports the giving of an instruction, but this burden is not heavy, and a defendant is entitled to an instruction even if the evidence is weak or doubtful. *Leffew*, 508 Mich at 644.

Consent is an affirmative defense to CSC if the prosecution's theory is based on force or coercion. *People v Waltonen*, 272 Mich App 678, 689; 728 NW2d 881 (2006). However, consent is not a defense to CSC when the person cannot consent to sexual penetration. *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005). Because defendant was convicted of penile-vaginal penetration on a helpless-victim theory,[1] he cannot show that the lack of a consent instruction warrants reversal.

## II. THE RAPE-SHIELD STATUTE

Defendant argues that evidence that the victim's sexual-assault kit revealed a second sample of male DNA should not have been excluded because the additional DNA did not establish a specific instance of the victim's sexual conduct. We agree that the trial court erred by ruling that this evidence should be excluded under the rape-shield statute, but the error is harmless.

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Sharpe*, 502 Mich at 324. If a discretionary decision involves underlying questions of law, this Court reviews those issues de novo. *Id*.

The Sixth Amendment of the United States Constitution provides that defendants have the right to confront the witnesses against them. US Const, Am VI; see also *People v Arenda*, 416 Mich 1, 7; 330 NW2d 814 (1982). However, the defendant's right to confrontation is not unlimited and may be restricted by other legitimate interests. *Id*. at 8. MCL 750.520j provides as follows:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under [MCL 750.520b to MCL 750.520g] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

---

[1] Defendant was acquitted of a CSC-II charge based on penile-oral penetration that was based on a force or coercion theory and a helpless-victim theory.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

"The rape-shield statute constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant." *Sharpe*, 502 Mich at 326 (quotation marks and citation omitted). It also reflects that inquiries into the victim's sexual history potentially prejudice and mislead the jury and that protecting the privacy of victims "removes an institutional discouragement from seeking prosecution." *Id*.

However, the rape-shield statute is concerned with whether the evidence "*amount*[s] to or *reference*[s] specific conduct, not whether the evidence constitutes a consequence of or relates to sexual activity generally." *Id*. at 328 (quotation marks and citation omitted; alterations and emphases in original). "[S]emen, pregnancy, or disease, while perhaps related to sex, are not themselves the specific instances of sexual conduct envisioned by MCL 750.520j." *Id*. at 329.

Here, the investigating detective stated during defendant's police interview, which was played for the jury, that the victim had "a kit done" and that there were "a couple DNA [sic] in there." When defendant sought to question the detective about the statement, the trial court ruled that the evidence fell within the rape-shield statute. The trial court erred. The presence of a second source of DNA in the victim's sexual-assault kit was evidence that related to sex but was not related to a specific instance of sexual conduct. *Id*.

However, this error was harmless. This Court will reverse on a preserved, nonconstitutional error only if, after examining the entire case, it affirmatively appears more probable than not that the error was outcome-determinative.[2] *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). See MCL 769.26. An error is outcome-determinative when, in light of the weight and strength of the untainted evidence, the error undermines the reliability of the verdict. *Lukity*, 460 Mich at 495. It is not reasonably likely that this error affected the outcome of defendant's case considering that the jury was aware that the victim and her boyfriend fought after the sexual assault, an expert witness testified that it was possible that the victim might have lied about the assault to avoid conflict with her boyfriend, and defendant was permitted to argue that the victim fabricated the assault to avoid conflict with her boyfriend.

---

[2] Defendant frames this issue as a constitutional confrontation issue, but his allegation of error involves an exception to the application of a statute. "Merely framing an issue as constitutional does not make it so." *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008). The rape-shield statute involves a legislative policy determination, see *Sharpe*, 502 Mich at 326, not a general constitutional right.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel provided ineffective assistance by (1) failing to hire an expert witness to address blackout drunkenness, and (2) allowing the admission of statements regarding other potentially criminal offenses. We conclude that defendant has not established that either decision was objectively unreasonable, or that he was prejudiced by either decision.

Generally, a defendant's ineffective assistance of counsel argument is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Id*. If the trial court has not held an evidentiary hearing, this Court's review is limited to errors apparent from the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).[3]

A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 653-654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Although counsel's strategic decisions must be objectively reasonable, the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). The defendant must also show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 55-56 (quotation marks and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

## A. EXPERT WITNESS

First, defendant argues that defense counsel provided ineffective assistance by failing to obtain an expert witness in "analytical toxicology, as well as drug and alcohol metabolism and/or a psychiatrist who specializes in addiction . . . ." Defendant has not established that counsel's failure to call such an expert was an unreasonable trial strategy or prejudicial.

Because a defendant must establish both prongs of the ineffective-assistance test, this Court may reject an ineffective-assistance argument on the lack of prejudice alone. *People v Reed*, 449 Mich 375, 400-401; 535 NW2d 496 (1995). A defendant asserting ineffective-assistance has the burden to establish the factual predicate. *People v Loew*, 340 Mich App 100, 120-121; 985 NW2d 255 (2022), lv gtd 979 NW2d 851 (2022). Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness likely affected the outcome of his trial. See *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018).

---

[3] Although defendant requests remand for an evidentiary hearing, because defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective, there is no need for a remand for a hearing. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007); MCR 7.211(C)(1)(a)(*ii*).

Defendant has not provided any affidavit or offer of proof to establish that experts in toxicology or alcohol metabolism, or a psychiatrist specializing in addiction, would have testified favorably in his case. Although defendant provided an unsworn statement that he believes an expert would have provided testimony that would have resulted in acquittal, this is not an indication that such a witness was available or would have testified favorably. As such, defendant has not satisfied the factual predicate for his argument and cannot establish prejudice from defense counsel's decision.

Second, defense counsel's decisions regarding which witnesses to call and how to question the witnesses are matters of trial strategy. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015). Counsel's failure to investigate and attempt to secure a suitable expert to support defendant's theory and counter the prosecution's expert may constitute an unreasonable trial strategy. *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). However, there is no obligation to provide "an equal and opposite expert." *Carll*, 322 Mich App at 702, quoting *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011) (quotation marks omitted). Cross-examination may be sufficient to show the defects in the opinion of the prosecution's expert. *Carll*, 322 Mich App at 702.

There is no error apparent from the record in defense counsel's decision to cross-examine the prosecution's witness rather than call his own. Defense counsel elicited the very testimony for which defendant argues an expert should have been called—to testify that a person who is blackout drunk may not be passed out, may move around, and may interact with people without remembering it. Defense counsel also elicited favorable testimony about nonverbal consent:

> It's really important for anybody initiating sex to make sure it is consensual and check in throughout the process, but I understand what you're saying because sometimes there is wild and crazy sex, and at what point does it not become consensual, and does a person communicate that. It is complicated, but it's up to the—it's up to both parties to get consent.

She also agreed that there were no hard rules about communication involving sex.

Additionally, it is unclear how testimony from an analytical toxicologist, an expert in drug and alcohol metabolism, or a psychiatrist specializing in addiction would have helped defendant's case, and potentially such testimony could have harmed it. When presuming that counsel rendered effective assistance, this Court should "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citations omitted). Here, the victim drank at least four wine coolers, at least a couple of shots, and possibly more than half a bottle of vodka. The victim's friend testified that the victim was stumbling and ended up vomiting into a bucket. It is possible that counsel was concerned that obtaining an expert on issues of alcohol metabolism or addiction would have exposed defendant's case to potentially harmful cross-examination about the victim's capacity to consent. Counsel was not ineffective in that regard.

## B. POLICE INTERVIEW ADMISSIONS

Defendant also argues that his counsel provided ineffective assistance by failing to move to exclude his statements during the police interview that he had possessed a gun, stolen a bicycle, and driven without a license plate. We conclude that defense counsel's decisions to not ask that the statements be excluded, but instead request a cautionary instruction, was objectively reasonable and did not prejudice defendant.

"A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). "[T]here are times when it is better not to object and draw attention to an improper comment." *People v Eliason*, 300 Mich App 293, 303; 833 NW2d 357 (2013) (quotation marks and citation omitted). Declining to raise an objection may be a sound trial strategy. *Id*. As previously discussed, when considering an ineffective-assistance argument, this Court must consider the possible reasons for counsel's actions. *Vaughn*, 491 Mich at 670.

During his police interview, defendant stated that his cousin had a concealed-carry permit but he did not and that he sometimes held the gun for him.[4] Defendant also stated during the interview that he had been pulled over because he "had no plates," which had occurred because the man he purchased the car from forgot to switch over the title. Finally, defendant also stated that, after he had a fight with his cousin, he stole a bike and rode it half of the way to Flint from Lansing.[5]

Before trial, there was discussion about the video, including objections by defense counsel that it could be observed that defendant was shackled and that defendant had been placed under arrest. Before the video was played, there was some discussion between the prosecutor, the court, and defense counsel about the muted portion of the video and how to explain to the jury about why a portion was muted. Although defense counsel did not offer any affirmative suggestions during that point in time, immediately after that issue was resolved, defense counsel noted that he had noticed that defendant had stated that "he was pulled over for no plates, another crime, possessed a gun, stole a bike, I would just advise the court that maybe we need that jury instruction on [inaudible]." The trial court noted that defense counsel stated he had reviewed the transcript, and defense counsel stated, "Yes, but I just thought the cautioning instruction for the jury." The existing record indicates that defense counsel put some thought into the statements and decided that a cautionary instruction would be the better strategy to address the issue.

Additionally, selectively muting certain portions of defendant's police interview would have been inconsistent with the strategy that defense counsel adopted in his closing arguments. Defense counsel argued that defendant was forthright and candid during the police interview. Counsel also extensively relied on the way that defendant's various statements in the video had been consistent with the evidence. Defense counsel may have been concerned that, if portions of defendant's statements were intermittently muted or excised during the playing of the video, the

---

[4] We note that the victim and her friend testified that defendant drew a gun from his waistband and placed it in the center console of the vehicle in which they drove to the liquor store.

[5] Although the prosecution's argument implies that defendant possessed a gun when he was pulled over, we have not found any statement to support this assertion in the police interview.

jury might have been led to wonder what defendant was hiding and not believed that his interview statements actually supported his case. Consequently, counsel's decision to request a cautionary instruction rather than to have the brief references redacted from the video was not an unreasonable trial strategy.

Further, defendant has not established that counsel's decision prejudiced him. It is not reasonably probable that a different outcome would have resulted but for defense counsel's failure to have certain portions of the video redacted. First, "[i]t is well established that jurors are presumed to follow their instructions." *Leffew*, 508 Mich at 654 (quotation marks and citation omitted). The trial court instructed the jury that it had "heard evidence that may show that the defendant committed crimes for which he is not on trial. You must not consider this evidence." It is presumed that the jury followed this instruction. Further, the jury acquitted defendant of a different CSC-III charge, which tends to support that the jury did not in fact consider evidence of defendant's other crimes when reaching its verdicts. The magnitude of the errors need not rise to the level of a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

Second, brief references are more likely to be harmless. See *People v Parcha*, 227 Mich App 236, 247-248; 575 NW2d 316 (1997). The references to defendant's carrying of a gun for his cousin, lack of license plates, and his stealing of a bicycle were relatively brief and tangential in the context of both the one-hour interview and the overall presentation of evidence. The prosecution did not mention these statements in closing arguments. Ultimately, we conclude that defendant has not shown that counsel's alleged error was reasonably likely to have affected the outcome of the case.

## IV. SEX OFFENDERS REGISTRATION ACT

The Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., was amended by 2020 PA 295, effective March 24, 2021. Defendant argues that the 2021 SORA constitutes cruel and unusual punishment under the United States Constitution and cruel or unusual punishment under the Michigan Constitution as applied to his case.

As an initial matter, this issue is not preserved. To preserve an argument that the defendant's sentence is unconstitutionally cruel or unusual, the defendant must raise it in the trial court. *People v Lymon*, 342 Mich App 46, 62; 993 NW2d 24 (2022), lv gtd 983 NW2d 82 (2023). Defendant did not do so. We review unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*. at 763. Additionally, a criminal defendant must show actual innocence or that the error seriously affected the fairness of the proceedings. *Id*. at 763-764.

The United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII, and the Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16. Because the Michigan Constitution provides broader sentencing protection than the federal constitution, if a sentence is constitutional under the Michigan Constitution, it is also constitutional under the federal constitution. *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). The retroactive application SORA, MCL 28.721 *et seq*., as amended by 2011 PA 17 and 18 (the 2011 SORA), violates state and federal constitutional prohibitions against ex post facto laws.

*People v Betts*, 507 Mich 527, 533; 968 NW2d 497 (2021). When addressing whether the 2011 SORA was a punishment, the Court stated that the Legislature likely intended the 2011 SORA as a civil regulation rather than a criminal punishment. *Id*. at 548-549. However, the Court held that the 2011 SORA "bears significant resemblance to the traditional punishments of banishment, shaming, and parole because of its limitations on residency and employment, publication of information and encouragement of social ostracism, and imposition of significant state supervision." *Id*. at 553.

Contrary to the prosecution's argument that binding precedent precludes defendant's argument, defendant may raise an as-applied challenge to the SORA. *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). A challenge is as applied when the defendant addresses the statute as applied to the defendant's case. See *id*. at 482 n 5. Defendant has done so.

On the merits, defendant argues that the requirement of the 2021 SORA that he register as a sex offender for the rest of his life is cruel or unusual punishment.

> To determine whether a punishment is cruel or unusual, courts assess whether it is "unjustifiably disproportionate" to the offense committed by considering four factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. [*Lymon*, 342 Mich App at 82.]

The first factor considers "the harshness of the penalty compared to the gravity of the offense." *Id*. It is undisputed that the burdens placed on a defendant who must register under the SORA are "onerous." See *id*. at 82-83. The defendant in *Lymon* had to register as a sex offender for a 15-year period after his incarceration of 7 to 15 years. *Id*. at 83.

As noted, defendant was sentenced to serve 57 months to 15 years in prison. Defendant, as a person convicted under MCL 750.520d, is a Tier-III offender. See MCL 28.722(u)(*ii*) and (v)(*iv*).[6] A Tier-III offender must comply with the SORA for life. MCL 28.725(13). Like the defendant in *Lymon*, defendant will be required to register as a sex offender well past his term of imprisonment.

However, when considering the gravity of the offense, this case is distinguishable from cases in which this Court has determined that SORA registration is a cruel or unusual punishment. The *Lymon* defendant's offense lacked a sexual component. *Lymon*, 342 Mich App at 52. In *People v Dipiazza*, 286 Mich App 137, 154; 778 NW2d 264 (2009), this Court determined that the offense was not very grave when the defendant was 18 years old and the victim was 15 years old, the victim's parents knew of the relationship and condoned it, and the defendant and the victim ultimately married.

---

[6] MCL 28.722(v)(*iv*) contains an exception for age difference that is not applicable in this case.

Defendant's offense, however, did involve a sexual component. The victim indicated a lack of sexual interest in defendant and she was unconscious until she woke up to find defendant penetrating her vaginally. The trial court found that defendant's offense was "pretty offensive," recognizing that defendant "got a child[7] drunk, and you had sex with her, and you filmed it, and I don't recall any testimony at all that shows that she was willing, able, conscious and able to participate in any of those acts." The statutory maximum term for the offense was 15 years' imprisonment, MCL 750.520d(2), and trial court ordered defendant to serve, at maximum, the 15-year statutory maximum term. This factor does not weigh in favor of a conclusion that defendant's lifetime registration was cruel or unusual punishment because, despite that defendant will be required to register for a time period well outside his term of imprisonment, the penalty of lifetime SORA registration is not overly harsh considering the gravity of defendant's offense.

The second factor considers "the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan." *Lymon*, 342 Mich App at 82. Related to this factor, this Court has considered whether identical criminal conduct results in substantially more severe punishment. *Id*. at 86. This Court considers whether the defendant's punishment is the same as punishment for similar factual circumstances. See *Dipiazza*, 286 Mich App at 154-155. Additionally, this Court has considered that legislatively mandated sentences are presumptively proportional and, therefore, not cruel or unusual. *Jarrell*, 344 Mich App at 486.

Here, defendant is legislatively mandated to register for life under the SORA as a Tier-III offender, and the legislative mandate renders this punishment presumptively proportional. Further, the majority of offenses that require registration under the SORA have a sexual component, *Lymon*, 342 Mich App at 86, and defendant's offense has a sexual component. We conclude that this factor weighs against defendant's argument that his registration requirement is cruel or unusual.

Under the third factor, we consider "the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states." *Id*. at 82. This Court previously has found this factor to be not particularly compelling because other states' versions of the SORA have major and minor differences compared to Michigan's version of the SORA, including that some states do not consider sex-offender registration to be a punishment at all. *Id*. at 87. This factor is not particularly helpful.

Under the fourth factor, this Court considers whether the punishment advances the goals of rehabilitation. *Id*. at 82. This Court has opined that lifetime registration does not advance the goals of rehabilitation. *Jarrell*, 344 Mich App at 486. This factor weighs in favor of a conclusion that defendant's sentence is cruel or unusual punishment.

We conclude that defendant's registration requirement is not cruel or unusual. Of the four factors, two balance against defendant's argument, one is not particularly useful, and one weighs in favor of defendant's argument. Further, because the application of the 2021 SORA to defendant

---

[7] The victim was 17 years old at the time of the offense.

is not unconstitutionally cruel or unusual under the Michigan Constitution, it is necessarily not cruel and unusual under the United States Constitution. See *Benton*, 294 Mich App at 204.

Affirmed.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien